UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KEVIN S. BURGESS, | Civil Action No.: 19-13243 |
| | Honorable Linda V. Parker |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 17, 18]

Plaintiff Kevin S. Burgess appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- Burgess's motion [ECF No. 17] be **DENIED**;

- the Commissioner's motion [ECF No. 18] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

   A.  **Background and Disability Applications**

Burgess was born on May 18, 1969, making him 46 years old on his alleged onset date of September 20, 2015.  [ECF No. 9-2, PageID.40, 47].  He has past work as a rolling machine operator.  [*Id.*, PageID.46].  He alleged disability because of severe lumbar back pain, pain and numbness radiating into legs, trouble sleeping and trouble concentrating.  [ECF No. 9-3, PageID.87].

After the Commissioner denied his disability application initially, Burgess requested a hearing, which took place in April 2018, and during which he and a vocational expert (VE) testified.  [ECF No. 9-2, PageID.53-84].  In an August 2018 written decision, the ALJ found Burgess not disabled.  [*Id.*, PageID.38-48].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Burgess timely filed for judicial review.  [*Id.*, PageID.27-29; ECF No. 1].

   B.  **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Burgess was not disabled. At the first step, he found that Burgess had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 9-2, PageID.40]. At the second step, the ALJ found that Burgess had the severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis of the hips, osteoarthritis of the right great toe, hypertension and obesity. [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.41-42].

Between the third and fourth steps, the ALJ found that Burgess had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), except he is able:

> to lift and/or carry up to 10 pounds occasionally; stand or walk for 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday, with an option to alternate between sitting and standing after 30 minutes; push or pull within the aforementioned weight restrictions; occasionally operate foot pedals with bilateral lower extremities; occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl; never climb ladders, ropes, or scaffolds; never have exposure to unprotected heights or moving mechanical parts.

[*Id.*, PageID.42]. At the fourth step, the ALJ concluded that Burgess could not perform his past relevant work as a rolling machine operator. [*Id.,* PageID.46]. After considering Burgess's age, education, work experience, RFC and the testimony of the VE, the ALJ determined that Burgess could perform work as a marker or parking lot attendant, jobs which exist in significant numbers in the national economy. [*Id.*, PageID.47].

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Burgess argues that the ALJ erred by discounting his treating physician's opinion, and by wrongfully interpreting raw medical data in developing the RFC. The Court finds that the ALJ's decision is supported by substantial evidence and recommends that it be affirmed.

**B.**

Burgess argues that the ALJ violated to treating physician rule by not giving controlling weight to the April 2018 opinion of his primary care physician, Andrew LaFleur, M.D., about the limiting effects of the pain experienced from his lumbar and hip conditions.[2] The Court finds no reversible error.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d

---

[2] The Commissioner argues that the treating physician rule should not apply to Dr. LaFleur's opinion because he was not a treating source, having only examined Burgess once in the relevant period. [ECF No. 18, PageID.479-485]. But the ALJ acknowledged the on-going treatment relationship between Burgess and Dr. LaFleur, whom the ALJ describes as Burgess's primary care provider. [ECF No. 9-2, PageID.46]. And because the ALJ gave good reasons for discounting the weight he gave Dr. LaFleur's opinion, the Court need not address the Commissioner's argument that he was not a treating physician.

at 242-43.  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases."  *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).

Here, Dr. LaFleur opined that Burgess would be unable to sustain a sedentary level of activity over the course of an eight-hour workday, and that his condition would prevent him from working even a single day per month.  [ECF No. 9-7, PageID.393].  The ALJ gave this opinion little weight, finding the extreme limitations were inconsistent with the objective medical signs and findings or Burgess's longitudinal treatment history.  [ECF No. 9-

7

2, PageID.46]. He found that the records showing Burgess's full range of motion, negative straight leg raise tests, mild abduction of gait, and 5/5 strength of the lower extremities, with only slight weakness on the left conflicted with Burgess's claims of disabling limitations. [*Id.*].

Burgess challenges the ALJ's conclusion that the objective medical signs contradicted Dr. LaFleur's opinion. Burgess argues that the ALJ's selective citations to the treatment notes of Burgess's neurosurgeon, Mark Adams, M.D., do not fairly represent Burgess's condition or provide good reason to discount Dr. LaFleur's opinion. [ECF No. 18, PageID.454-461].

Burgess notes MRI results from November 2015 and March 2017, along with EMG results from March 2015 and X-rays from April 2018 to contest the ALJ's finding that objective medical signs contradicted Dr. LaFleur's opinions. [*Id.*, PageID.454-455]. Burgess argues that the ALJ provides no analysis about why these test results conflict with Dr. LaFleur's opinions. But the diagnostic testing, which the ALJ did consider, is not solely determinative of affording controlling weight to an opinion. [ECF No. 9-2, PageID.44].

First, imaging results do not translate into any particular functional limitations. *Abraham v. Comm'r of Soc. Sec.,* 2019 WL 5680809, at *7 (E.D. Mich. Aug. 17, 2019), *adopted*, 2019 WL 5690320 (E.D. Mich. Sept.

8

30, 2019) (citing *Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, at *4 (E.D. Mich, July 14, 2015) (MRI reports provide no insight into what limitations Plaintiff may suffer based on the diagnoses in them.)).  Second, to warrant controlling weight, an opinion must be well-supported by medically acceptable diagnostic **and** clinical evidence, **and** not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.

Here, the ALJ found that the results of Dr. Adams' clinical examinations, that Burgess showed full range of motion, negative straight leg raises and normal or slightly reduced strength, contradicted the extreme limitations suggested by Dr. LaFleur.  [ECF No. 9-7, PageID.227, 325, 329, 335].  The ALJ also determined that Burgess's activities of daily living do not support the severity of his alleged symptoms.  [ECF No. 9-2*,* PageID.45].  The ALJ detailed that Burgess could complete his personal care activities independently, and could perform some household chores, including cutting his lawn on his riding mower.  [*Id.*, PageID.67-68; ECF No. 9-6, PageID.194].  The ALJ also noted Burgess's testimony that he reads a great deal and spends considerable time on the computer, despite his assertion that he struggles to concentrate due to his level of pain.  [ECF No. 9-2, PageID.43, 68].

9

Burgess argues that the ALJ failed to articulate good reasons for discounting Dr. LaFleur's opinion because he ignored the nearly equal number of clinical examinations showing Burgess with a restricted range of motion, crediting only those showing a full range of motion. [ECF No. 19, PageID.502; ECF No. 9-7, PageID.271, 314-315, 349, 325, 329, 335]. "While the ALJ need not address every piece of evidence in the record, he does not fairly discharge his duties when he fails to meaningfully discuss significant contradictory portions of the record. A substantiality of evidence evaluation does not permit a selective reading of the record." *Espy v. Comm'r of Soc. Sec.,* CV 19-10305, 2019 WL 6273455, at *8 (E.D. Mich. Oct. 25, 2019), *adopted*, 2019 WL 6254652 (E.D. Mich. Nov. 22, 2019) (internal citations omitted). Even if the ALJ's discussion of clinical evidence was improperly selective, Burgess's reported daily activities could be enough to satisfy the good reason requirement, as substantial evidence contradicted Dr. LaFleur's extreme limitations. *See Gentry*, 741 F.3d at 723, 727-29 (an opinion must be well-supported by medically acceptable diagnostic and clinical evidence, **and** not inconsistent with other substantial evidence) (emphasis added). But the Court need not resolve this controversy because, even if the ALJ did not provide sufficiently good reasons for discounting Dr. LaFleur's opinion, that error is harmless.

A violation of the good reasons rule is harmless error if the treating physician's opinion is "so patently deficient that the Commissioner could not possibly credit it." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (citations and internal quotations marks omitted).[3] Opinions that do not translate into functional limitations, or that are too vague to provide any insight into a plaintiff's specific functional abilities are patently deficient and cannot be credited. *See Acosta v. Comm'r of Soc. Sec.*, 17-12414, 2018 WL 7254256, at *10 (E.D. Mich. Sept. 6, 2018), *adopted*, 2019 WL 275931 (E.D. Mich. Jan. 22, 2019) (collecting cases). For example, opinions that a plaintiff "will be severely limited from the ability to perform sedentary activity," that she was limited to "reduced activity," or that her pain caused "difficulty in performing her activities of daily living" were all considered too vague to be credited as treating source opinions. *See, e.g.*, *id.*; *Mosby-Clark v. Comm'r of Soc. Sec.*, 2018 WL 2426126, at *3 (E.D. Mich. May 30, 2018); *Bruce v. Comm'r of Soc. Sec.*, 2010 WL 5932326, at *8 (E.D. Mich. Dec. 9, 2010), *adopted*, 2011 WL 833792 (E.D. Mich. March 4, 2011).

---

[3] A court may also find harmless error if may be harmless error if "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion" or "where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940.

11

Likewise here, Dr. LaFleur's opinion that Burgess "would be able to perform sustained activity at a sedentary exertional level over an 8 hour work day without the need to lay down or take several unscheduled rest breaks due to pain and/or fatigue," which is strikingly similar to the patently deficient opinion rejected in *Acosta,* offers no insight into any specific functional limitation caused by his impairments. *See id.;* [ECF No. 9-7, PageID.393]. The Court finds this opinion to be so vague as to be patently deficient. Any ALJ error in discounting it was thus harmless.

### C.

Burgess also asserts that the ALJ's finding that he could sit for 30 minutes at a time and for six hours in an eight-hour workday is not supported by substantial evidence. He argues that the ALJ provides no rationale to support that conclusion and that the undisputed medical evidence contradicts it. [ECF No. 17, PageID.462].

The "undisputed medical evidence" Burgess cites is Nurse Practitioner Patricia Davis's opinions and examination notes. [*Id.*]. Although NP Davis is not an acceptable medical source, the ALJ considered her opinions as "other sources" in his decision. [ECF No. 9-2, PageID.46]. "The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to

assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248–49 (6th Cir. 2015) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir.1997); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir.2014)).

Here, the ALJ afforded the opinions little weight because they contradicted Dr. Adams' examination and treatment records, specifically the multiple findings of full range of motion, negative straight leg raises, and normal strength discussed in the previous section. [ECF No. 9-7, PageID.277, 325, 329, 335]. Discounting the debatable opinions of NP Davis, the ALJ based his RFC assessment for Burgess on the objective medical evidence, finding further restriction unwarranted because Burgess's subjective complaints were not entirely consistent with the objective medical evidence, and there was no other medical source statement to consider and weigh. [ECF No. 9-2, PageID.46].

The ALJ must base the RFC decision on "all of the relevant medical and other evidence." 20 C.F.R. § 416.945. "The Regulation does not require that the Commissioner rely on a physician's RFC finding or any other particular piece of evidence." *Chamberlin v. Comm'r of Soc. Sec.*, 19-10412, 2020 WL 2300240, at *3 (E.D. Mich. May 8, 2020). And "the

13

Sixth Circuit has been clear that the ALJ does not need to rely on a medical opinion in formulating the RFC." *Id.* Courts do require ALJs, "as non-physicians, to exercise caution in evaluating raw medical data to extrapolate what a claimant can and cannot do." *Id.* (collecting cases).

Contrary to Burgess's assertion, this is not an instance in which the RFC hinges on the ALJ's inappropriate interpretation of raw medical data. [ECF No. 19, PageID.500-503]. Most of the evidence that the ALJ reviewed was not complicated medical data that requires professional training to interpret.[4] *See id.* Instead, the ALJ mainly considered objective clinical findings that can be translated into functional limitations, even by a lay person. *See id.*

Here, the ALJ discussed Dr. Adams' examination and treatment records, which note at least four examinations where Burgess had full range of motion of the lumbar spine with no pain upon extension, flexion, right or left lateral rotation, negative straight-leg raises, and 5/5 strength in lower extremities on the right and slightly weaker on the left. [ECF No. 9-2,

---

[4] The ALJ discussed Burgess's MRIs and other diagnostic tests, which reflect herniated discs, pre and post-surgery, as well as spondylolysis and stenosis of the lumbar spine. [ECF No. 9-7, PageID.337-338, 341, 343-344]. But, as noted previously, MRI reports provide no insight into what limitations a plaintiff may suffer based on the diagnoses in them. *Flowers,* 2015 WL 4274961, at *4. Thus, the ALJ did not have to interpret Burgess's MRIs to develop his RFC.

14

PageID.44-45; ECF No. 9-7, PageID.277,325, 329, 335]. The Court finds that the ALJ's conclusions about Burgess's strength and range of motion combined with evidence of his daily activities are straightforward and did not require expert medical interpretation to determine that Burgess could perform a limited range of light work. See Chamberlin, 2020 WL 2300240, at *4. Because the objective findings relied on were not "raw medical data," the ALJ did not venture into the impermissible zone of interpreting raw medical data and extrapolating functional limitations from it. See id. Thus, the Court finds no error in the ALJ's assessment of the RFC, even with no medical opinion that directly supports the RFC.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Burgess's motion for summary judgment be **[ECF No. 17]** be **DENIED**; that the Commissioner's motion **[ECF No. 18]** be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

Dated: January 25, 2021

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF

System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2021.

                                                    s/Marlena Williams
                                                  MARLENA WILLIAMS
                                                  Case Manager